

CLERK'S OFFICE
A TRUE COPY
Mar 03, 2025
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Uber records relating to a November 12, 2024 trip, between 10:00 and 11:00 PM C.S.T. from approximately 1114 W. Carroll Ave., Chicago, Illinois 60607 to approximately Milwaukee County, WI

)
)
)
)
)
)
)

Case No. 25 MJ 01

Matter No. 2025R00023

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A,

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1951 | Hobbs Act Robbery |
| Title 18 U.S.C. § 924(c) | Use of a Firearm during the Commission of a Violent Crime |
| Title 18 U.S.C. § 922(g)(1) | Prohibited Person in Possession of a Firearm |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GABRIEL LOWRANCE Digitally signed by GABRIEL LOWRANCE
Date: 2025.02.25 14:43:44 -06'00'

*Applicant's signature*

Gabriel Lowrance, ATF Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: 03/03/2025

*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Gabriel Lowrance, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with certain account(s) that is stored at premises owned, maintained, controlled, or operated by Uber Technologies Inc. ("Uber"), a service provider headquartered at 1515 3rd Street, San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Uber to disclose to the government copies of the information (including the content of communications) further described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items also described in Attachment B

2.     I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2020.  As an ATF Agent, I have participated in the investigation of firearms-related offenses, including violent crimes such as armed carjackings and robberies, and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm-related offenses and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the

1

actions, habits, traits, methods, and terminology utilized by violators of firearms law and traffickers and abusers of controlled substances.

3.       I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That training included various legal courses related to constitutional law as well as search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.       Based on my training, experience and participation in the investigation of firearms-related offenses and drug trafficking, I know and have observed the following:

5.       I have relied on informants to investigate firearms-related offenses and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

6.       I also know that drug traffickers and individuals involved in firearms-related offenses commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

7.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

8.     There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively evidence of Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned cellular device.

## **PROBABLE CAUSE**

9.     On November 12, 2024, at approximately 9:54 P.M., Chicago, Illinois, Police Department officers responded to a report of a person shot in the area of 2415 S. Normal Ave, Chicago, Illinois 60616. Upon arrival, officers located two subjects. Faliang Gao (M, DOB 07/1992, hereinafter "**VICTIM 1**") was found unresponsive and suffering from apparent gunshot wounds, lying in a courtyard associated with the aforementioned address. Jianru Zheng (M, DOB 06/1991, hereinafter "**VICTIM 2**") was suffering from apparent gunshot wounds, lying in a parking lot north of 2415 S. Normal Ave.

10.    The Chicago Fire Department responded and rendered aid. **VICTIM 1** was pronounced deceased at the scene and **VICTIM 2** was transported to Stroger Hospital where he succumbed to his injuries and pronounced deceased. Officers observed a blood trail from the remains of **VICTIM 1** that led to the front door of 2415 S. Normal Ave., Unit E. Officers found the front door unlocked, entered the residence and observed blood stains in various places. Investigators searched the residence and recovered three 9mm fired cartridge casings inside the residence, as well as large quantities of suspected cannabis (some of which were vacuum sealed and in large cardboard boxes). Investigators also located a digital scale, minimal clothing and furniture inside the residence. The residence appeared to be used primarily as a suspected marijuana packaging, storage, and distribution location. Investigators further located a

3

cellular phone determined to not be registered to either victim. Investigators determined this phone to be registered to the phone number 414-837-9285 with AT&T as the service provider. This cellphone was subsequently found to belong to Jhony J. MARCHENA (M, DOB 02/2002), which will be detailed later in this affidavit.

11. Your affiant is aware that MARCHENA has been previously convicted of multiple felonies by the courts of the State of Wisconsin, including of being an Adjudicated Delinquent in Possession of a Firearm in case 2022CF003603 and case 2022CF002146. Because of these convictions it is unlawful for MARCHENA to possess firearms.

12. Law enforcement also conducted a canvass of the area around the homicide scene for surveillance video and the following is a summary of images captured on various videos:

13. Investigators discovered a vehicle, consistent with a black Dodge Durango (Hereinafter "**SUSPECT VEHICLE 1**") parked on the public way at 2424 S. Normal Ave. at approximately 8:52 P.M. This location is approximately 100 feet from the mouth of the alley associated with the crime scene.

14. At approximately 9:01 P.M., the garage door associated with 2415 S. Normal Ave, Unit E, opened and a vehicle consistent with a mini-van, later identified as a gray, 2013, Toyota Siena, mini-van, (Illinois plate R839869, hereinafter "**VICTIM VEHICLE**") backed into the garage. As the garage door started to close, three unknown subjects were observed running eastbound in the alley towards the garage. All three subjects entered said garage just before the garage door closed.

15. At approximately 9:16 P.M., **VICTIM VEHICLE** exited the garage for the first time and traveled westbound in the alley. **VICTIM VEHICLE** entered the parking lot of Connie's Pizza, 2373 S. Archer Ave., west of the crime scene. A black Ford F-150 (Hereinafter "**SUSPECT VEHICLE 2**") pick-up truck with a bed cap followed **VICTIM VEHICLE**. **VICTIM VEHICLE** exited the parking lot and traveled southbound on Normal Ave. as **SUSPECT VEHICLE 2** followed. Both vehicles then passed **SUSPECT VEHICLE 1**.

4

16.     After moving past **SUSPECT VEHICLE 1**, **SUSPECT VEHICLE 1** joined in the caravan and all three vehicles moved in tandem. At approximately 9:18 P.M., all three vehicles parked in the alley behind 339 West 23rd Place in Chicago. A video that captured the **VICTIM VEHICLE** travel down this alley also showed, what appeared to be, multiple large cardboard boxes inside the **VICTIM VEHICLE.** At approximately 9:23 P.M., **SUSPECT VEHICLE 2** separated from the group and at approximately 9:28 P.M., **SUSPECT VEHICLE 2** entered the on-ramp at 649 W. 18th St., Chicago, Illinois, northbound on Interstate 90. This on-ramp is equipped with a Chicago Police Department license plate reader. Said reader captured an image of the rear license plate attached to **SUSPECT VEHICLE 2**; Wisconsin plate PF4766. A Wisconsin Department of Transportation check revealed the registered owner as Colt Construction Services II, LLC of Milwaukee, Wisconsin. The registered make and model of **SUSPECT VEHICLE 2** was a 2016 Ford F-150 pickup.

17.     At approximately 9:34 P.M., **SUSPECT VEHICLE 1** and **VICTIM VEHICLE** returned to the area of the homicide scene and **SUSPECT VEHICLE 1** parked near the end of the alley of 2415 S. Normal Avenue while **VICTIM VEHICLE** returned to the garage and entered the garage. The garage door then closed. The garage door later opened at approximately 9:41 P.M., and **VICTIM VEHICLE** drove away. At approximately 9:46 P.M., **SUSPECT VEHICLE 1** and **VICTIM VEHICLE** again parked near the end of the alley.

18.     At approximately 9:51 P.M., the garage of 2415 S. Normal Ave., Unit E opened, and a masked suspect exited and ran westbound in the alley. A witness later told investigators they observed the suspect enter **VICTIM VEHICLE** on the passenger side. A video then captured **VICTIM 2** emerge running into the parking lot north of the residence, eventually collapsing near the witness. The same witness, observed **VICTIM VEHICLE** a short time later, drive past the witness and **VICTIM 2**, and **VICTIM VEHICLE** was occupied by two individuals in the front seats.

19.     At approximately 9:53 P.M., **SUSPECT VEHICLE 1** separated from **VICTIM VEHICLE** and at approximately 9:55 P.M., **SUSPECT VEHICLE 1** was observed entering the on-ramp

5

at 649 W. 18th St., Chicago, Illinois northbound on Interstate 90. This on-ramp is equipped with a Chicago Police Department license plate reader. Said reader captured an image of the rear license plate attached to **SUSPECT VEHICLE 1**; Wisconsin plate AXD6437. A Wisconsin Department of Transportation check revealed the registered owner as Shania C. Staples (F, DOB 04/2000). The registered make and model was a 2022 Dodge Durango, VIN: 1C4SDJGJ1NC182203.

## RECOVERY OF VICTIM VEHICLE

20.     On November 15, 2024, an off-duty police officer notified the Chicago Police Department of a suspicious vehicle parked along a set of railroad tracks near 350 N. Morgan St., Chicago, Illinois 60607 and said vehicle contained an unknown amount of United States currency in plain view. Responding officers found the vehicle to be **VICTIM VEHICLE**.

21.     Investigators conducted a canvass for surveillance video in the area. Investigators learned **VICTIM VEHICLE** was parked at the location at approximately 10:09 P.M. on November 12, 2024. After parking, two unknown subjects were walking from the vehicle, westbound. As the subjects continued to move westbound, said subjects reached a large multi-unit apartment building at 1114 W. Carroll Ave., Chicago, Illinois 60607, and walked around the building. One of the two subjects could be seen operating an item consistent with a cellular phone. ATF Special Agent (SA) Rick Hankins reviewed the video and still photos of the subjects. SA Hankins recognized the unmasked subject, using a cellphone, from previous surveillance and investigations as Geo D. OWENS (M, DOB 10/1997). OWENS is a known associate of Jhony MARCHENA. The other individual captured on video with OWENS appeared to be taller with a slender build, which is generally consistent with MARCHENA. At approximately 10:34 P.M., the two subjects walked westbound from the building, out of view from surveillance cameras.

22.     On November 19, 2024, a search warrant was obtained by the Chicago Police Department for **VICTIM VEHICLE**. Upon searching, investigators recovered multiple items of

6

evidentiary value which included two suitcases of suspected cannabis and a large amount of United States currency.

23. On October 29, 2024, **VICTIM VEHICLE** was involved in a criminal damage complaint, taken by the Kenosha, Wisconsin, Police Department at Kwik Trip, 12224 74th St, Kenosha, Wisconsin 53142. During the incident **VICTIM 2** reported individuals damaged a window of **VICTIM VEHICLE. VICTIM 2** reported no items were taken from the vehicle and only a window was damaged.

24. Per Kenosha Police Department reports, surveillance video of the incident was obtained from the Best Western hotel, 7220 122nd Ave, Kenosha, Wisconsin 53142. Video showed at approximately 6:59 P.M., a black, possibly Dodge Durango or Jeep Grand Cherokee pulled into the parking lot of the hotel. Three individuals, wearing dark clothing, walked from the area to the Kwik Trip towards **VICTIM VEHICLE**.

25. An additional report by the Kenosha Police Department detailed video reviewed. Kenosha Police Department reports indicated **VICTIM VEHICLE** appeared to be followed by the suspect vehicle. The vehicles were traveling southbound on 122nd Ave. A subject was observed on video retrieving a large item from **VICTIM VEHICLE**. Kenosha investigators attempted to make contact with **VICTIM 2** and calls were not returned.


## DATA EXTRACTION OF SUSPECT CELLPHONE RECOVERED AT SCENE

26. Chicago Police Department investigators obtained a State of Illinois search warrant for the cellphone recovered at the November 12, 2024, homicide scene. The phone was determined to be an Apple iPhone 11 Pro Max, IMEI #353900100765068, Apple ID t8g23@icloud.com, last used MSISDN 414-837-9285. Information in the phone also identified the Apple "Find My" feature as related to the aforementioned iCloud account and the name "Jhony Marchena". The device was also related to the Facebook profile "Jayy RackedUp", Facebook profile ID #100040453024988, and the date of birth

7

February 23, 2000. The profile images of "Jayy RackedUp" are consistent with the Milwaukee Police Department booking photographs of MARCHENA. Herein after **SUSPECT DEVICE 1 (**414-837-9285)**.**

27.     On November 12, 2024, between 9:28 P.M. and 9:53 P.M., approximately ten communications occurred between **SUSPECT DEVICE 1** (414-837-9285) and the phone number 404-441-4793, listed under the contact name "Gee2". (Hereinafter **SUSPECT DEVICE 2**) Your affiant knows this phone number to be related to Geo D. OWENS from databases available to law enforcement. During this time frame, **SUSPECT DEVICE 1** (414-837-9285) and **SUSPECT DEVICE 2** (404-441-4793) attempted several video phone calls. This would coincide with the incident timeline at 2415 S. Normal Ave., Unit E.

28.     **SUSPECT DEVICE 1 (**414-837-9285) identified the related Instagram profile as username "Thousand8" with profile ID #19472308189. Your affiant knows "Thousand8" to be an alias used by MARCHENA as a rapper in various songs and Youtube videos. Your affiant knows through training and experience, individuals will use Instagram to communicate via text and video messaging on the platform.

29.     The profile "Thousand8" communicated with the Instagram profile #9738015773 on November 12, 2024, beginning at approximately 5:32 P.M. The unidentified profile asked, on behalf of "Chop", if MARCHENA had spoken with "heem". Your affiant knows "Chop" to be a nickname for Nicholas J. SILVA-STULO. MARCHENA sent instructions to call the following day or call MARCHENA and provided the phone number 414-837-9285.

30.     Between November 11, 2024, and November 12, 2024, "Thousand8" communicated with the Instagram profile "Globaltrapstar" Instagram profile #6870064961. Your affiant knows "Globaltrapstar" to be a moniker used by Geo D. OWENS in song and Youtube music videos, and interviews.

31.     On November 12, 2024, "Thousand8" communicated with the Instagram profile "Ness", Instagram profile ID #240650232. "Thousand8" sent a video file at approximately 7:37 P.M. The video

8

appears in the records to have been deleted. At approximately 7:38 P.M., "Ness" sent a message asking, "When are u gonna be done"? There was no response to the message by "Thousand8".

32.     On the same date, between approximately 9:58 P.M. and 11:30 P.M., **SUSPECT DEVICE 1 (**414-837-9285) received approximately nine missed phone calls. One call came from the phone number 414-267-7069, listed under the contact name "Jr". A missed incoming call to **SUSPECT DEVICE 1 (**414-837-9285) occurred at approximately 10:04 P.M. Chicago Police Department investigators identified this as a blocked call from the device related to Geo OWENS.

33.     **SUSPECT DEVICE 1 (**414-837-9285) also received phone calls from the phone number 414-737-6813, listed under the contact "Nessa". Your affiant knows this phone number to be related to Vanessa L. Casas-Garcia (F, DOB 4/2000) through State of Wisconsin Department of Corrections information, a known associate of MARCHENA.

34.     In the location data from **SUSPECT DEVICE 1 (**414-837-9285) a location was provided with the coordinates (43.108340, -88.020276) at approximately 6:58 P.M on November 12, 2024. When entered into Google Earth, this location is near 8666 W. Appleton Ave., Milwaukee, Wisconsin 53225. Your affiant knows **VICTIM 1** to have communication attempts prior to and after the incident on November 12, 2024, with the phone number 414-334-6224. Your affiant knows this number to be related to Demetrius L. JAMES (M, DOB 3/1996) and the address 8707 W. Appleton Ave, Milwaukee, Wisconsin 53225 through databases available to law enforcement. Your affiant knows these locations to be in close proximity of one another. Geo OWENS is also known to investigators to have been in contact with 414-334-6224 on or about November 10th and November 11, 2024.

35.     **SUSPECT DEVICE 1** (414-837-9285) cellphone records from AT&T indicated that MARCHENA called Shania Staples at 262-901-8368. The call occurred on November 10, 2024, at approximately 1:05 A.M. Also, the contact for 262-901-8368 is labeled in the **SUSPECT DEVICE 1 (**414-837-9285) contact list as "Srt Durango" and "Nia".

36.     A review of photos on **SUSPECT DEVICE 1** (414-837-9285) showed at least one selfie video that depicted MARCHENA holding the cellphone on June 24, 2024.  Investigators also located a video of Geo OWENS on **SUSPECT DEVICE 1** (414-837-9285) that was captured on October 19, 2024.

## CELLPHONE PROVIDER RECORDS

37.     SA Rick Hankins reviewed call detail records for 213-434-4957.  This number is known to be related to Nicholas SILVA-STULO through databases available to law enforcement.  SILVA-STULO called (404) 441-4793 (**SUSPECT DEVICE 2**) at 10:06 P.M. on November 12, 2024.  **SUSPECT DEVICE 2** (404-441-4793) called (213) 434-4957 (SILVA-STULO) at 10:25 P.M. on November 12, 2024.  Further review of calls showed there were no calls between 6:06 P.M. - 9:36 P.M. on November 12, 2024.  The records showed (213) 434-4957 (SILVA-STULO) called (414) 338-4634 at 9:36 P.M., 9:53 P.M., and 10:03 P.M. on November 12, 2024.

38.     On November 21, 2024, a search warrant was obtained by the Chicago Police Department for AT&T to provide account data associated with the phone number of 414-837-9285 (**SUSPECT DEVICE 2**) Investigators discovered the device was subscribed to an unknown pre-paid customer from Milwaukee, Wisconsin.  Investigators also discovered the tower records associated with the account showed the cellular device travelled from Wisconsin to Chicago, Illinois, shortly before the incident on November 12, 2024.

39.     On December 20, 2024, the Chicago Police Department obtained a search warrant for T-Mobile records for account data associated with the cellular phone number of **SUSPECT DEVICE 2** (404-441-4793).  Tower activity placed the device in the area of the recovered Toyota Sienna (**VICTIM VEHICLE)** near 350 N. Morgan St. Chicago, Illinois 60607, on the evening of November 12, 2024.  An outgoing call was placed at approximately 10:08 P.M. to 414-460-7614. Your affiant is aware this is the approximate time of arrival of **VICTIM VEHICLE** based on recovered surveillance footage by the Chicago Police Department.  Data transfer activity and calls continued in the area until approximately

10

10:31 P.M. At approximately 10:34 P.M., a sector change occurred for **SUSPECT DEVICE 2** showing evidence of movement west. At approximately 11:48 P.M., data transfer activity occurred showing **SUSPECT DEVICE 2** was using towers in the area of Kenosha, Wisconsin. Your affiant is aware this travel time is consistent with vehicular travel.

40. SA Gabriel Lowrance reviewed **VICTIM 2's** historical location data related to an Apple iPhone 15 Pro Max (312-731-3418). Data for the phone provided by the Chicago Police Department showed the device of **VICTIM 2** traveled from the Chicago, Illinois area to the area of Milwaukee, Wisconsin on November 10, 2024, between 5:45 P.M. and 6:57 P.M. The device was also in the Milwaukee, Wisconsin area between approximately 6:24 P.M. and 7:45 P.M. on November 12, 2024. Notably, the cellphone records for both OWENS and MARCHENA show movement of their devices from Milwaukee, Wisconsin to Chicago, Illinois that mirrors the general movement of **VICTIM 2'S** cellphone from Milwaukee, Wisconsin to Chicago, Illinois during the same timeframe on November 12, 2024, with all three devices utilizing towers that provided coverage for the homicide scene at 2415 S. Normal Ave. in Chicago, Illinois after 9:00 P.M.

41. Cellphone number (213) 434-4957 is a number associated with Nicholas SILVA-STULO known to agents through databases available to law enforcement and is listed as a contact number in **SUSPECT DEVICE 1**. SA Lowrance reviewed call records of contacts with phone number (414) 837-9285 (**SUSPECT DEVICE 1**). Additionally, records obtained from Verizon via grand jury subpoena showed number (213) 434-4957 (SILVA-STULO) had multiple contacts with the following three phone numbers associated with Geo OWENS: (310) 269-8954, (404)735-9068, and **SUSPECT DEVICE 2** (404-441-4793). Specifically, (213) 434-4957 (SILVA-STULO) called **SUSPECT DEVICE 2** (404-441-4793) at 10:06 P.M. on November 12, 2024. The records also showed **SUSPECT DEVICE 2** (404-441-4793) called (213) 434-4957 (SILVA-STULO) at 10:25 P.M. on November 12, 2024. Further review of the calls showed there were no calls between approximately 6:06 P.M. - 9:36 P.M. on November 12, 2024. The records showed (213) 434-4957 (SILVA-STULO) called (414) 338-4634 at approximately 9:36 P.M.,

11

9:53 P.M., and 10:03 P.M. on November 12, 2024. Your affiant knows the homicide to have occurred in Chicago, Illinois between 9:00 P.M. and 10:00 P.M. on November 12, 2024.

## CASH APP RECORDS

42.     On December 20, 2024, State of Illinois search warrant 24SW60074 was obtained by the Chicago Illinois Police Department for the cellular phone number of **SUSPECT DEVICE 2** (404-441-4793). Tower activity placed the device in the area of the crime scene (2415 S. Normal Ave.) beginning at 8:49 P.M. on November 12, 2024. Tower activity also placed the device attached to the account in the area of the recovered **VICTIM VEHICLE** when it was parked at 350 N. Morgan St., Chicago, Illinois. During said tower activity, an outgoing call was placed at 10:08:06 P.M. to 414-460-7614. This is the approximate time of arrival of VICTIM VEHICLE at that location based on recovered surveillance footage by Chicago Police Department Investigators. Data transfer activity and calls continued in the area until 10:31:17 P.M. At 10:34.38 P.M., a sector change occurred showing evidence of movement west. At 10:55:35 P.M., tower locators suggest movement northbound heading outside of Chicago, Illinois. At 11:48.24 P.M., data transfer activity occurred using towers in the area of Kenosha, Wisconsin.

43.     Chicago Police Department Detective Dale Potter inspected the call data records associated with **SUSPECT DEVICE 2** (404-441-4793) and discovered that after the phone number of 414-460-7614 was called, said number returned calls four times prior to moving northbound from the city. On February 4, 2025, Chicago Police Department Investigators obtained State of Illinois search warrant 25SW01394 for T-Mobile to provide Investigators account data associated with the phone number of 414-460-7614. Chicago Police Department Investigators discovered the user of the account 414-460-7614 was in the area of Butler, Wisconsin, during the communication with **SUSPECT DEVICE 2** (404-441-4793) on the evening of November 12, 2024. The account is also listed as prepaid with no subscriber information.

12

44.     Chicago Police Department Detective Dale Potter conducted a publicly viewable Cash App search using the phone number of 414-460-7614.  The search identified the phone number 414-460-7614 as an account associated with $Cashtag of "$tkatzman" and display name "Nat".  State of Illinois Search warrant 25SW00580 was obtained by the Chicago Police Department for records of Cash App account data associated with the $Cashtag of "$tkatzman" and the username "Nat".  Chicago Police Department Investigators discovered the account holder to be Natessya KATZMAN (F, DOB 2/2000), and an address of S89W 12841 Aster Hills Court, Muskego, WI.  Case Agents know KATZMAN to be an associate of Geo OWENS from previous surveillance.  Also present in the Cash App records was a $2,500.00 transfer dated November 12, 2024, to Cash App user "Jinpeng Li". This transfer occurred at 6:07:16 P.M.  The call data records, and cellular tower activity associated with KATZMAN'S phone number of 404-460-7614 showed an outgoing call at 6:08:12 P.M.  The tower that serviced said call is near to Butler, Wisconsin, a northwestern suburb of Milwaukee, Wisconsin.

45.     Previously, Chicago Police Department Detective Dale Potter examined cellular account data associated with **VICTIM 2'S** cellular device.  Said records showed that ZHENG traveled from Chicago, to Milwaukee, Wisconsin, and back to Chicago just prior to his murder.  At 7:03 P.M. on the same date, ZHENG'S cellular tower activity placed ZHENG in the same general area as KATZMAN'S phone records.  The time of **VICTIM 2'S** visit is fifty-five minutes after the Cash App money transfer to user "Jinpeng Li". The tower that serviced **VICTIM 2'S** call activity is approximately three miles from the tower that serviced KATZMAN'S call activity.

46.     Also present in the Cash App records for KATZMAN was a $250.00 Cash App transfer dated November 12, 2024, to Cash App user "Dajae". Said transfer occurred at 10:08:54 P.M. which is shortly after a phone call placed by 404-441-4793 (OWENS) to KATZMAN at 10:08:06 P.M. on November 12, 2024.  On February 21, 2025, SA Gabriel Lowrance attempted to schedule an Uber ride from 11114 W. Carrol Ave., Chicago, Illinois to Milwaukee, Wisconsin at 10:30 P.M. a time consistent with the suspected travel of OWENS.  SA Gabriel Lowrance found the estimated cost of the travel for an

13

Uber ride from the area of 1114 W. Carroll Ave., Chicago, Illinois 60607 to Milwaukee, Wisconsin to cost approximately $225.00.

## SUSPECT VEHICLE 1

47.     The listed title holder for **SUSPECT VEHICLE 1** is Shania C. Staples (F, DOB 4/2000) at 6073 North 122nd Street, Milwaukee, Wisconsin.  The VIN for the Dodge Durango is 1C4SDJGJ1NC182203. The vehicle plate registration for the Durango expired on November 30, 2024. Staples also is the listed owner of a white, 2016, Toyota Sienna van with Wisconsin plate AYM4341, at address N52W16778 Oak Ridge Trail, Menomonee Falls, Wisconsin.  The vehicle plate registration for the Toyota Sienna expires on September 30, 2025.  A query of Transunion Locator Services showed that Shania Staples is associated with cellphone number 262-901-8368.  Agents further requested that the Milwaukee Police Department (MPD) query their records for Shania Staples and MPD reported that Staples claimed phone number 262-901-8368 during a police contact.

## JAMES AND OWENS

48.     SA Gabriel Lowrance reviewed El Monte, California, Police Department reports related to the arrest of Demetrius JAMES and Geo OWENS.  On September 12, 2024, El Monte Police Department investigators were conducting surveillance in the area of the apartment complex at 10568 Gateway Promenade due to complaints by management and suspected narcotics activity.

49.     El Monte Police Department investigators observed an Asian male, black female, and three black males walking towards the complex entry door.  The subjects appeared to be together and were in possession of five large rolling suitcases.  On top of the suitcases were unopened cardboard boxes and one black male was carrying a large, folded cardboard box.  The Asian male and one black male were later observed through an open balcony door of unit #402 of the complex.

14

50.     Approximately one hour after the subjects were seen entering the complex, the black males and the black female were seen walking the suitcases back to a black GMC sport utility vehicle (California plate 9NFV478) and a black Bentley (Florida plate 41DGTN) parked on the west side of the complex.  The subjects were observed loading the suitcases into the Bentley and two black males entered the vehicle.  The remaining black male and black female got into the GMC.  Both vehicles left the location.

51.     El Monte Police Department investigators conducted a traffic stop on the Bentley. JAMES was contacted as the driver of the vehicle and OWENS as the front seat passenger.  JAMES exited the vehicle and was found to have bulk United States currency in his front pockets.  Six suitcases containing vacuum sealed bags of suspected cannabis, weighing approximately fifty pounds each, were located on the rear seat and in the trunk area.  A black backpack containing a large amount of United States currency was also located.  JAMES was identified as the black male observed by investigators in Unit #402.  The backpack contained approximately $4,055 in United States currency.  JAMES was found to be in possession of approximately $22,465 in United States currency.  OWENS was found to be in possession of approximately $3,070.

52.     On September 12, 2024, El Monte Police Department investigators conducted a search warrant at 10568 Gateway Promenade, #402, El Monte, California 91731.  During the search, investigators located suspected ketamine, suspected MDMA pills, suspected cannabis, vacuum seal bags, suspected THC edibles and vape cartridges, scales, and United States currency. Investigators located two cellphones inside the residence.  Investigators also located a debit card, a driver's license, and mail displaying the name Jinwei Shao (M, DOB 3/1994). Shao was identified as the Asian male previously observed entering the complex.

15

## INMATE JAIL CALL ACTIVITY

53.     SA Rick Hankins reviewed recorded jail calls placed by Kenneth TWYMAN (M, DOB 10/1997, Wisconsin DOC inmate #656776) while he was incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. This facility is managed by the Wisconsin Department of Corrections (DOC).

54.     TWYMAN placed multiple recorded phone calls to 312-451-0269 and a male with an accent answered the calls.  Phone number 312-451-0269 was identified by the Chicago Police Department as the phone number for **VICTIM 1** (Gao).

55.     On May 2, 2024, at 8:57pm, TWYMAN called **VICTIM 1** at 312-451-0269.  During this phone call, **VICTIM 1** informed TWYMAN that **VICTIM 1** was "not good" with TWYMAN'S cousin "G" as well as "Monty".  TWYMAN told **VICTIM 1** that "Monty" was in jail and had been sentenced to 2-3 years. TWYMAN asked **VICTIM 1** how much "G" owed **VICTIM 1** and **VICTIM 1** stated that "G" owed **VICTIM 1** "80".  TWYMAN claimed "G" had not told him that.  TWYMAN later told **VICTIM 1** that "G" had admitted to TWYMAN that he owed **VICTIM 1** money, but "G" claimed **VICTIM 1** didn't answer phone calls.  **VICTIM 1** responded that he believed "G" to be "bullshit".

56.     On May 5, 2024, at 4:33pm, TWYMAN called **VICTIM 1** at 312-451-0269 using the calling ID for another inmate.  **VICTIM 1** told TWYMAN that **VICTIM 1** had sent TWYMAN a text via an app.  TWYMAN asked how much "G" owed **VICTIM 1** and **VICTIM 1** said "G" owed "80" and together with Monty, **VICTIM 1** was owed "160 K".  TWYMAN asked if **VICTIM 1** still had the "tab" and **VICTIM 1** said he did.  TWYMAN asked **VICTIM 1** to send the tab to "Meech" and TWYMAN would have "Meech" give the tab to "G".  **VICTIM 1** further stated that he had given "50" to "G" before "G" went to jail and **VICTIM 1** doesn't believe that "G" is going to pay **VICTIM 1**.  TWYMAN said "G" would have to pay **VICTIM 1** or else TWYMAN would be done "fucking with him".  TWYMAN further said that "G" had told TWYMAN that **VICTIM 1** had added the debt "G" owed with the debt

16

owed by "Monty". **VICTIM 1** said he did not combine the debts. TWYMAN said he would have "Meech" call **VICTIM 1**. **VICTIM 1** later said he had to sell his watch to pay off his own debt because "G" did not pay him. **VICTIM 1** stated he believed "G" used the money owed to **VICTIM 1** to buy houses. TWYMAN said that "G" was a liar who also owed TWYMAN money. [ATF executed a federal search warrant on 12/12/2023 at the residence of Damonti "Monti" LOCKHART in Milwaukee, Wisconsin. LOCKAHART was a known associate of Geo OWENS. ATF seized a distribution amount of marijuana during that search warrant.

57.     TWYMAN also placed multiple recorded phone calls to 404-735-9068 and a male answered the calls. Phone number 404-735-9068 was a number for a listed contact found in **SUSPECT DEVICE 1** (414-837-9285) that was recovered at **VICTIM 1'S** homicide scene in Chicago, Illinois on November 12, 2024. The name for the contact listed in **SUSPECT DEVICE 1** (414-837-9285) for this number was "Gee3". Additionally, the name associated with this number according to a reverse lookup in Inmate Solutions is Geo OWENS. OWENS is a close associate of both TWYMAN and MARCHENA. OWENS is commonly referred to by his associates as "G" / "Gee". A query of phone number 404-735-9068 in Transunion Locator Services (TLO), which is a public records database, showed that number to be associated with Geo D. OWENS (DOB 1/1997) at 3820 North 11th Street, Milwaukee, Wisconsin. SA Rick Hankins further recognized the voice on the recorded calls to 404-735-9068 to be consistent with the known voice of OWENS.

58.     On May 26, 2024, at 12:33pm, TWYMAN called OWENS at 404-735-9068. At the approximate 4:25 minute mark in the recorded call, TWYMAN asked OWENS what was up with "this J, shit, bro?" TWYMAN told OWENS he needed to figure out the situation. OWENS claimed "J" was telling TWYMAN something different. TWYMAN stated "J" just wanted some money from OWENS. TWYMAN further said he told "J" that "little bro" was locked up so nothing could be done. OWENS said "J" had told OWENS that the amount was "100 plus". TWYMAN told OWENS that OWENS needed to give "J" something because TWYMAN had given his word.

17

59.     On November 24, 2024, at 8:56pm, TWYMAN called OWENS at 404-735-9068 and told OWENS he had been calling OWENS on the other number. During the call, OWENS told TWYMAN, "Big Bro hit me, he said China man died." TWYMAN responded he heard about the death and didn't know if it was true.

60.     TWYMAN placed multiple recorded phone calls to 404-441-4793 and a male answered the calls. Phone number 404-441-4793 was a number for a listed contact found in Jhony MARCHENA'S cellphone that was recovered at **VICTIM 1'S** homicide scene in Chicago, Illinois on November 12, 2024. The name for the contact listed in MARCHENA'S cellphone for this number was "Gee2". TWYMAN called this number approximately twenty-one times between October 27, 2024, and November 10, 2024, with one completed call on November 10, 2024. There were no other attempted calls to this number by TWYMAN for the search period April 1, 2024, January 26, 2025. SA Rick Hankins further recognized the voice on the recorded call to 404-441-4793 to be consistent with the known voice of Geo D. OWENS

61.     TWYMAN also placed multiple recorded phone calls to 310-269-8954 and a male answered the calls. The name associated with this number according to a reverse lookup in Inmate Solutions is Geo OWENS. SA Rick Hankins further recognized the voice on the recorded calls to 310-269-8954 to be consistent with the known voice of Geo D. OWENS. TWYMAN called OWENS on this number 327 times between July 15, 2024, and January 25, 2025, with the most recent connected call to OWENS on January 25, 2025.

62.     On January 17, 2025, at 11:51am, TWYMAN placed a recorded phone call to 213-434-4957 and a male answered the call. Phone number 213-434-4957 was a number for a listed contact found in Jhony MARCHENA'S cellphone that was recovered at VICTIM 1'S homicide scene in Chicago, Illinois on November 12, 2024. The name for the contact listed in MARCHENA'S cellphone for this number was "ChopMx". A query of phone number 213-434-4957 in Transunion Locator Services (TLO), which is a public records database, showed that number to be associated with Nicholas Jacob SILVA-STULO (DOB 9/1995) at 2724 S. 29th Street, Milwaukee, Wisconsin. SA Rick Hankins further requested

18

the Milwaukee Police Department (MPD) query their records for phone number 213-434-4957 and MPD reported that the number was associated with Nicholas Jacob SILVA-STULO, who claimed it as his contact number. MPD also reported that SILVA-STULO reported a second phone number of 414-239-0943.

## SILVA-STULO AND OWENS

63. SA Rick Hankins reviewed Geo OWENS' call detail records for OWENS' cellphone 404-441-4793 (**SUSPECT DEVICE 2**), which were previously obtained by the Chicago Police Department from T-Mobile via search warrant. Specifically, SA Hankins reviewed phone contact between OWENS and Nicholas SILVA-STULO on November 12, 2024. SILVA-STULO'S cellphone number is 213-434-4957.

64. T-Mobile records showed OWENS and SILVA-STULO had multiple contacts on November 12, 2024. The contacts included a 37 second call from OWENS to SILVA-STULO at approximately 9:34 P.M. while OWENS utilized a cellphone tower that provided coverage for an area that included 2415 S. Normal Avenue, Chicago, Illinois (Homicide scene).

65. **SUSPECT VEHICLE 2** is a vehicle registered to Colt Construction Services LLC at 2928 West Cleveland Avenue, Milwaukee, Wisconsin. A listed owner of Colt Construction Services is Richard Joseph Stulo (M, DOB 12/1970) who resides at 2670 S. 29th Street, Milwaukee, Wisconsin. Richard Stulo is the father of Nicholas SILVA-STULO, whose has also used the address of 2670 S. 29th Street. Milwaukee property records show that Nicholas SILVA-STULO owns a home at 2724 S 29th Street in Milwaukee, which is approximately ½ block north of 2670 S. 29th Street. On November 13, 2024, at approximately 4:37 A.M., **SUSPECT VEHICLE 2** was observed on license plate reader information available to law enforcement parked in front of 2670 S. 29th St., Milwaukee, Wisconsin 53215.

19

## SUMMARY

66.     Based on the aforementioned facts, Your Affiant believes Geo OWENS, Jhony MARCHENA, and Nicholas SILVA-STULO conspired with each other as well as unknown actors to conduct an armed robbery of a narcotic business in violation of 18 U.S.C. 371 and 18 U.S.C. 924(c). More specifically, I believe the aforementioned evidence establishes the following:

67.     **VICTIM 2** traveled to Milwaukee on November 12, 2024, to likely deliver suspected marijuana. **VICTIM 2** traveled back to Chicago, at which time the cellphone devices of OWENS and MARCHENA also traveled to Chicago. Your Affiant believes that OWENS, MARCHENA, and others either followed **VICTIM 2** or they already knew the location of 2415 S. Normal Avenue, Chicago, Illinois. Either way, OWENS, MARCHENA, and others waited for **VICTIM 1 and VICTIM 2** to arrive at 2415 S. Normal Avenue, Chicago, Illinois and then conducted an armed home invasion in order to rob the victims of suspected marijuana as well as drug money.

68.     **VICTIM VEHICLE** was used to transport the robbery proceeds including boxes of suspected marijuana to the alley behind 339 W. 23rd Place in Chicago where the boxes were likely transferred to **SUSPECT VEHICLE 2 and SUSPECT VEHICLE 1**. The suspect vehicles then traveled from Chicago to Milwaukee with a large quantity of suspected marijuana.

69.     While the large quantity of suspected marijuana was being transferred from the **VICTIM VEHICLE** to the suspect vehicles, MARCHENA was holding **VICTIM 1 and VICTIM 2** hostage at 2415 S. Normal Avenue. At or about 9:51 P.M., MARCHENA shot the two victims inside 2415 S. Normal Avenue Unit E and dropped his cellphone. MARCHENA subsequently ran out of the residence and got into the front passenger seat of the **VICTIM VEHICLE** driven by OWENS.

70.     OWENS and MARCHENA abandoned the **VICTIM VEHICLE** along a set of railroad tracks near 350 North Morgan St., Chicago, Illinois. OWENS then placed multiple calls, likely to co-conspirators, and he and MARCHENA somehow travelled back to Milwaukee.

20

**CONCERNING UBER**

71.     Your affiant knows from personal experience an Uber ride can be scheduled and arranged by users for other individuals.  Although other ridesharing options exist, your affiant is aware that according to Bloomberg Second Measure, Uber has a dominant market-share (76%) of the ridesharing industry.

72.     With the post homicide phone communications, Cash App data, and cellular phone data, your affiant believes it is likely suspects utilized a rideshare service such as Uber to return to Milwaukee, Wisconsin from Chicago, Illinois after the abandonment of **VICTIM VEHICLE.** Specifically, as outlined above, OWENS' SUSPECT DEVICE 2 phone calls at 10:08 PM on November 12, 2024 to KATZMAN, and KATZMAN's immediate $250 Cash App transfer to "Dejae" seem consistent both chronologically and financially with KATZMAN or "Dejae" ordering an UBER at OWENS' request.

**CONCLUSION:**

73.     In sum, your affiant believes Uber records likely exist that could help to further identify suspects and co-conspirators of the homicide and home invasion.  Your affiant believes it likely that someone ordered an Uber ride with the intent of assisting in suspects returning to Milwaukee, Wisconsin, after abandoning **VICTIM VEHICLE** in Chicago, Illinois.

**TECHNICAL INFORMATION**

74.     Uber is a technology company with a proprietary technology application (the "Uber App") that provides on-demand lead generation and related services. The Uber App connects independent providers of transportation services with requests from riders requesting transportation services. Drivers provide transportation services to riders through a range of offerings based on vehicle type and/or the number of riders.

21

75.     Uber stores and maintains information related to riders and driver-partners. When riders sign up and use the service, certain information is obtained and maintained in the ordinary course of using the service. This may include a phone number, email address, name, account start and end date, registration IP address, status, rating, payment method, customer service communications, and photo. When driver-partners sign up to use Uber, it may have additional information including, license plate numbers, vehicle information, address, a driver-partner's employer (if any), insurance information, agreements, certain communications between driver partners and riders, and some GPS location data.

76.     Providers such as Uber typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

77.     In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

22

78.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Uber to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### AUTHORIZATION REQUEST

79.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

80.     I further request that the Court direct Uber Technologies to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on Uber Technologies, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

81.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

23

**ATTACHMENT A**

**Property to Be Searched**

     This warrant applies to information that is stored at the premises owned, maintained, or controlled by Uber Technologies, a company headquartered in San Francisco, California, which include:

- Records associated with any completed or canceled ride occurring on November 12, 2024, between 10:00 P.M. C.S.T and 11:00 P.M. C.S.T. from the approximate address 1114 W. Carroll Ave., Chicago, Illinois 60607 to approximately Milwaukee County, Wisconsin.

- Pick up and drop off location and trip GPS information.

- Driver personally identifiable information

24

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by Uber**

To the extent that the information described in Attachment A is within the possession, custody, or control of Uber, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Uber, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Uber is required to disclose the following information to the government for each account listed in Attachment A from November 12, 2024:

a. All records or other information regarding the identification of the accounts listed in Attachment A, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, login IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, device information i.e. model and IMEI numbers, any available profile pictures, means and source of payment (including any credit or bank account number), and drivers vehicle information i.e. license plate data, make and model of vehicle, insurance, registration data and VIN;

b. All records pertaining to communication between Uber and any person regarding the accounts listed in Attachment A, including contacts with support services and records of actions taken.

c. All records associated with rides requested, cancelled, and/or completed by the accounts listed in Attachment A on November 12, 2024, including pickup and destination locations and

25

times, amount charged, map of route taken, and billing transaction history i.e. amounts, dates, times, and payment instrument used.

d. All records, including GPS location data, for both the passenger, purchaser of the ride and driver, and any communications between the passenger, ride purchaser, and driver, associated with the November 12, 2024, ride.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of, or was property used in, committing crimes involving, violations of Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned cellular device.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original      ☐


CLERK'S OFFICE
A TRUE COPY
Mar 03, 2025
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   25    MJ    01 |
| Uber records relating to a November 12, 2024 trip, between 10:00 and 11:00 PM C.S.T. from approximately 1114 W. Carroll Ave., Chicago, Illinois 60607 to approximately Milwaukee County, WI | ) ) ) ) | Matter No. 2025R00023 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    03/17/2025    *(not to exceed 14 days)*
   ☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable William E. Duffin  .
                                                      *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    03/03/2025 at 1:50 p.m.        *William E. Duffin*
                                                             *Judge's signature*

City and state:    Milwaukee, WI            Honorable William E. Duffin, U.S. Magistrate Judge
                                                            *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information that is stored at the premises owned, maintained, or controlled by Uber Technologies, a company headquartered in San Francisco, California, which include:

- Records associated with any completed or canceled ride occurring on November 12, 2024, between 10:00 P.M. C.S.T and 11:00 P.M. C.S.T. from the approximate address 1114 W. Carroll Ave., Chicago, Illinois 60607 to approximately Milwaukee County, Wisconsin.

- Pick up and drop off location and trip GPS information.

- Driver personally identifiable information

24

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by Uber**

To the extent that the information described in Attachment A is within the possession, custody, or control of Uber, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Uber, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Uber is required to disclose the following information to the government for each account listed in Attachment A from November 12, 2024:

a. All records or other information regarding the identification of the accounts listed in Attachment A, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, login IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, device information i.e. model and IMEI numbers, any available profile pictures, means and source of payment (including any credit or bank account number), and drivers vehicle information i.e. license plate data, make and model of vehicle, insurance, registration data and VIN;

b. All records pertaining to communication between Uber and any person regarding the accounts listed in Attachment A, including contacts with support services and records of actions taken.

c. All records associated with rides requested, cancelled, and/or completed by the accounts listed in Attachment A on November 12, 2024, including pickup and destination locations and

25

times, amount charged, map of route taken, and billing transaction history i.e. amounts, dates, times, and payment instrument used.

d. All records, including GPS location data, for both the passenger, purchaser of the ride and driver, and any communications between the passenger, ride purchaser, and driver, associated with the November 12, 2024, ride.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of, or was property used in, committing crimes involving, violations of Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned cellular device.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("Provider") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Provider. The attached records consist of _____ (*generally describe records in terms of pages, CDs or megabytes of data*). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Provider, and they were made by Provider as a regular practice; and

b.      such records were generated by Provider's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Provider in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Provider, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                              Signature